**Elizabeth J. VALENTE et al., Plaintiffs,**

v.

**PEPSICO, INC., et al., Defendants.**

**Civ. A. No. 4537.**

United States District Court, D. Delaware.

Jan. 26, 1976.

Rodman Ward, Jr., and James L. Holzman of Prickett, Ward, Burt & Sanders, Wilmington, Del., Herbert E. Milstein and Glen DeValerio of Harold E. Kohn, P.A., Washington, D.C., of counsel, for plaintiffs.

Alfred M. Isaacs of Flanzer & Isaacs, Wilmington, Del., Edward Slovick, James S. Gordon and Stephen M. Slavin, Chicago, Ill., of counsel, for intervening plaintiffs George Pope and Andrew Dimitriou.

Hugh L. Corroon of Potter, Anderson & Corroon, Wilmington, Del., for defendants.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This class action brought by common stock holders, warrant holders, and de-

benture holders · of Wilson Sporting Goods Company ("Wilson"), seeks redress of certain alleged violations of federal securities laws. Before the Court are cross motions for summary judgment, one by defendants and one by intervening plaintiffs, Pope and Dimitriou.[1]

The events forming the essential background of this action are not in dispute. Wilson was organized under the Delaware corporation laws in April 1967 as successor to the Athletic Goods Division of Wilson & Co. The latter corporation was merged into Ling-Tempco-Vought, Inc. ("LTV") in June 1967, and Wilson became an LTV subsidiary. A minority share of the outstanding Wilson common stock was offered to the public in August 1967; the remaining shares continued to be held by LTV.

In October 1968 Wilson issued for public sale $35,000,000 of 6½% subordinate debentures due in 1988 and warrants to purchase 875,000 shares of common stock. The offer was made in "units"; each consisting of one $1,000.00 debenture and warrants to purchase 25 shares of common stock.[2] Each warrant entitled the holder to purchase one share of Wilson stock "on or after December 3, 1968, at a price of $20.25 per share (subject to adjustment) until October 15, 1978, when the Warrants expire."[3]

The prospectus contained no information regarding the possible effects that a merger might have on warrant holders, but the description of the warrants began with the following qualification:

The Warrants are to be issued under a warrant agreement (the "Warrant Agreement") dated as of October 15, 1968 between [Wilson] and Marine Midland Grace Trust Company of New York, as Warrant Agent (the "Warrant Agent"). A copy of the form of Warrant Agreement has been filed as an exhibit to the Registration Statement, and the statements contained herein are brief summaries of certain provisions contained therein, do not purport to be complete, are subject to all the provisions of the Warrant Agreement and are qualified in their entirety by the reference to the Warrant Agreement.

Prospectus at 22.

The warrant agreement is a nineteen page document. Section ten of the agreement reads as follows:

Section 10. CONSOLIDATION OR MERGER. If, on or prior to October 15, 1978, the Company shall at any time consolidate with or merge into another corporation, the holder of each Warrant Certificate will thereafter receive, upon the exercise thereof, the securities or property to which a hold-

---

1. The first motion was filed by intervening plaintiffs. After the intervenors represented to the Court that their case would be purely a "document case" and would in no event involve additional evidence beyond the Wilson Prospectus and the Pepsico Tender Offer, defendant Pepsico, Inc. moved for dismissal of the intervening complaint for failure to state a claim or, alternatively, for summary judgment. Transcript of Hearing June 11, 1975 at 23–24.

Pope and Dimitriou were granted the right to intervene after their motion for class action determination in a separately filed action was denied. In addition to their status as intervenors, Pope and Dimitriou are included in the class of plaintiffs represented by Valente as they have not elected, pursuant to Rule 23(c)(2) Fed.R.Civ.P. to opt out of that class.

2. The debentures and warrants were not to be separately transferable until December 3, 1968. Prospectus at 1.

3. Prospectus at 1. The prospectus further stated:

The Warrants are fully registered and when separated from the Debentures may be presented for transfer, exchange or exercise at the office of the Warrant Agent, at any time at or prior to the close of business on October 15, 1978, at which time the Warrants become wholly void and of no value. Prospectus at 22.

Similar language was included in the warrant certificates.

er of the number of shares of Common Stock then deliverable upon the exercise of such Warrant Certificate would have been entitled upon such consolidation or merger, and the Company shall take such steps in connection with such consolidation or merger as may be necessary to assure that the provisions of this Agreement shall thereafter be applicable, as nearly as reasonably may be, in relation to any securities or property thereafter deliverable upon the exercise of the Warrant Certificates. A sale of all or substantially all the assets of the Company for a consideration (apart from the assumption of obligations) consisting primarily of securities shall be deemed a consolidation or merger for the foregoing purposes.

In 1969 intervening plaintiff Pope purchased 2,200 of the warrants, and intervening plaintiff Dimitriou purchased 2,500.

In February 1970 LTV transferred ownership of its Wilson stock to Pepsico, Inc. ("Pepsico"), and two and a half years later, on July 26, 1972, Pepsico made tender offers of $17.50 per share for Wilson common stock and $3.50 per share for Wilson warrants.[4] The invitation for tenders of warrants stated, in pertinent part:

PepsiCo is making this tender offer as a part of its previously announced intention to acquire 100% of the outstanding equity securities of Wilson by not later than the end of January, 1973. . . . PepsiCo presently intends to liquidate the present Wilson by means of a merger in which the consideration paid to the remaining holders of the then outstanding Common Stock of Wilson would be $17.50

cash per share. In such event, holders at that time of Warrants to purchase Common Stock of Wilson would have an exercise price of ($20.25) in excess of the liquidation price. Accordingly, it may be uneconomical for warrantholders to exercise their Warrants at that time. The exercise price of the Warrants is also in excess of present market value of the Common Stock of Wilson and in excess of the price offered hereby therefor. Warrantholders are urged to consider with care the fact that by foregoing this tender offer or open market sales, if available, prior to the liquidation referred to above, they may be left with securities having no value whatsoever. Invitation for tenders of warrants at 3.

In response to this tender offer, Pope and Dimitriou tendered their warrants at $3.50 each. On December 22, 1972, Pepsico consummated the merger and all Wilson shareholders who had previously failed to tender their shares were given $17.50 in exchange for each share of their Wilson stock.[5]

Count I of the complaint in intervention alleges that Wilson, and thus Pepsico as the surviving corporation, violated Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5 promulgated thereunder, by concealing from the purchasers of the Wilson warrants at the time of the purchase the fact that a merger could, in effect, terminate their warrants prior to October 15, 1978.

Count II seeks recision of the sale of those warrants sold to Pepsico for $3.50 each as a part of the tender offer on the grounds that the tender offer indicated that warrants not tendered to Pepsico or sold on the open market prior to the

4. At the time of the tender offers, Pepsico held 88.2% of the outstanding Wilson common stock. Invitation for tenders of warrants at 2.

5. The warrant agent avers that it is still serving in that capacity and will continue to do so until the termination date on the warrants. However, no warrants are being exercised, for one would need to present a warrant plus $20.25 to the agent in order to receive $17.50, the latter sum being the "securities or proper-

ty to which a holder of the number of shares of Common Stock then deliverable upon the exercise of such Warrant Certificate would have been entitled upon . . . consolidation or merger." Warrant agreement, Section 10.

Stockholders unwilling to accept $17.50 per share did have the option of exercising their appraisal rights. See, 8 Del.C.A., §§ 253 and 262 (1975).

then contemplated merger would be worthless. Intervening plaintiffs allege that this statement was false and misleading, because the merger, as a matter of law, could not extinguish the warrant holders' rights to exercise their warrants until the close of business on October 15, 1978. As alternatives to recision, count II seeks either damages for the loss occasioned by the tender offer, or an order declaring the warrants valid and exercisable to purchase a pro rata number of shares of Pepsico common stock.[6]

In essence, Pope and Dimitriou contend that, at a minimum, either (a) the statement in the prospectus that the warrants were exercisable until October 15, 1978 was false and misleading or else (b) the statement in the tender offer that the warrants might be made prematurely worthless was false and misleading.

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), makes the use of deceptive devices in connection with the purchase or sale of securities unlawful. SEC Rule 10b–5 enacted to implement this statutory purpose, reads:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to

make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

In explanation of the conduct that will give rise to a private right of action under this rule, the Third Circuit recently stated, "The elements of a plaintiff's case on liability include knowledge by the defendants, intent to defraud (scienter), failure to disclose to the plaintiff, materiality of the facts, and, in some instances, reliance by the plaintiff." *Thomas v. Duralite Co.*, 3 Cir., 524 F.2d 577, 583 (1975).

At the summary judgment stage, the Wilson Prospectus and the Pepsico Tender Offer, standing alone, are, in this Court's view, factually incomplete to prove the above elements. With respect to count I, there is no showing of any intentional misrepresentation by Wilson, i. e., no showing that Wilson and its officers were aware of a planned merger and failed to disclose the consequences of such a merger at the time the prospectus was written. Moreover, even if this Court were prepared to hold that mere negligence on the part of the defendants would be sufficient to satisfy the so-called "scienter" requirement,[7] intervening plaintiffs' motion could not succeed. The present record fails to show that Wilson was negligent in 1968 for failing to include in the prospectus

---

6. Both of the counts of the complaint in intervention are based solely on alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5. Accordingly, no issues regarding violations of other federal securities laws are before the Court. The Valente complaint, which awaits trial, is not so limited.

7. Whether mere negligence will satisfy this requirement is unclear. In *Duralite, supra,* the Court noted "the division of authority on whether an actual intent to defraud must be proved." The question of what constitutes a proper standard of culpability is addressed at

some length in *Kohn v. American Metal Climax, Inc.,* 458 F.2d 255, 279–88 (3rd Cir.), *cert. denied,* 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972) (Adams concurring and dissenting). See also *Rochez Bros. v. Rhoads,* 491 F.2d 402, 407–08 (3rd Cir. 1975). Cf., *Rochez Bros. v. Rhoads,* 527 F.2d 880 (3rd Cir. 1975). See generally, Note, Scienter and Rule 10(b)–5, 69 Col.L.Rev. 1057 (1969); Note, Scienter in Private Damage Actions Under Rule 10(b)–5, 57 Geo.L.J. 1108 (1969); and Note, Proof of Scienter Necessary in a Private Suit Under SEC Anti-Fraud Rule 10(b)–5, 63 Mich.L.Rev. 1070 (1965).

information relating to the effect on warrant holders of a merger that would be effectuated more than four years later by a controlling shareholder not then known, and of whose intentions Wilson has not been shown to have been aware. This Court has no record upon which it may determine whether a reasonably prudent issuer of warrants should have been expected to weigh the possibility or probability of a merger occurring at any time prior to the expiration date of the warrants and disclose that probability and its potential effect. Neither can this Court determine on the present record whether a reasonably prudent investor should not already have known of such possibilities. A factual question left totally unanswered by the present record is the understanding in the market, by both reasonable sellers and buyers, of what the terms of the prospectus meant in view of the absence of any information therein relative to the effect that a cash tender offer and merger might have on the value of the warrants. Nor can this Court take judicial notice of such an understanding.[8]

This open factual question is also determinative of intervening plaintiffs' motion under their count II. Pepsico, as offeror in 1972, correctly defined what would happen in the cash merger situation which it proposed.[9] That is, because of the value given to a share of stock in the offer, the warrants would become uneconomical to exercise. Limited to its own terms, the disclosure by Pepsico in the tender offer is not misleading as it relates to the value of the warrants.

The disclosure, however, might be misleading if, as controlling shareholder, Pepsico had other duties. Thus, the issue is whether Pepsico could cause Wilson to violate the understanding which Wilson allegedly created in 1968. If a reasonably prudent investor would have understood the prospectus and his rights as preventing the corporation from merging in such a fashion as to destroy the economic viability of his warrants, then Pepsico's attempt to treat the warrants in this fashion through its subsidiary might be actionable. The Court can only determine that question, however, in light of a determination of what the understanding was in 1968 and in light of the understanding in the market in 1972.

Defendants' summary judgment or dismissal motion must also be denied. Although intervening plaintiffs' attorney has represented that he will not present further evidence, it is entirely possible that other members of the plaintiff class not bound by intervening plaintiffs' representations will, in the course of their proofs, present evidence bearing on the issues here discussed. Accordingly, defendants' motion cannot now prevail.

Submit order.

---

8. Intervening plaintiffs also argue that if Section 10 of the warrant agreement is deemed to be incorporated by reference into the prospectus, a further deception is practiced, for Section 10 of the agreement only refers to mergers effectuated by the exchange of "securities or property" for Wilson common stock. Intervening plaintiffs contend that the omission of the term "cash" is crucial, for it would lead a warrant holder reading the agreement in 1968 to conclude that the agreement did not contemplate a merger resulting in the exchange of cash for Wilson shares. For the reasons expressed above, this Court is not now prepared to hold, as a matter of law, that the wording of the 1968 warrant agreement constitutes negligence by reason of its arguable failure to address a merger for cash that would occur four years later.

9. The issue of whether the terms of the proposal were fair is not present on this motion. The question here is whether Pepsico accurately described its offer and its power to accomplish such an offer in light of the terms of the Wilson Prospectus.